GARRETT W. IRONS, complainant,

*v.*

ANNA B. CRANMER and IRVEN R. CRANMER, defendants.

[Decided June 3d, 1924.]

**Partnership—Dissolution—Accounting—Interest on Capital Furnished—Was This Investment or Loan.**

On final hearing.

*Mr. James S. Turp,* for the complainant.

*Mr. Linton Satterthwaite,* for the defendants.

BUCHANAN, V. C.

The bill is for partnership dissolution and accounting. The partnership, the right to decree of dissolution, and to

an accounting, are all conceded on the hearing, and it further appears that the parties are agreed as to the various sums and figures entering into the statement of an itemized accounting, excepting only in so far as such accounting is affected by a determination of two questions as to the terms and provisions of the partnership agreement.

The agreement reads as follows:

"An agreement between Anna B. Cranmer, Garrett W. Irons and I. R. Cranmer, made this 28th day of April, 1920.

"We, the undersigned, do hereby agree to the following arrangement:

"That we are jointly to engage in the house building business, and that Garrett W. Irons and I. R. Cranmer are to each work as builders together and receive the same rate of wages, viz., $8 each per day for each day's work, and that they are to hire what other help is needed, from time to time, in their judgment, and that the rate of pay, etc., for such help to be mutually agreed upon by the undersigned.

"That this concern will be financed by Anna B. Cranmer and I. R. Cranmer. The buildings which are to be erected, when completed, are to be offered for sale at a price to be determined upon by the below-mentioned persons.

"That the difference between the cost price of said buildings and the selling price are to be equally divided between the below-mentioned parties after all expenses incidental thereto have been fully paid.

"That it is mutually agreed upon that all three persons concerned will consult with each other in regards to the purchase of all material for said buildings.

"It is further understood between all concerned, that in consideration of the fact that an equal distribution of the profits are to be made between the after-mentioned parties that Garrett W. Irons is to act as architect and chief mechanic, whose duties shall consist of planning and figuring on all proposed buildings to be erected by this concern and the purchase of all material to be used on these buildings, in addition to his regular carpenter work on said buildings.

"That it is further agreed upon that no purchase of any kind to be made unless mutually agreed upon by all concerned.

"It is understood that any infringement or violations made by either party concerned shall be sufficient cause for immediate dissoultion, and that each and every statement made above shall be null and void and the agreement fully canceled.

"Witness: DANIEL G. IRONS.

"ANNA B. CRANMER,
"GARRETT W. IRONS,
"I. R. CRANMER.

"Signed by"

The first question is as to whether the two defendants, who furnished all the capital for the partnership, are entitled to interest on the capital so furnished.

The Uniform Partnership act (*P. L. 1919 p. 481*), section 18, provides in subsection (d) that "a partner shall receive interest on the capital contributed by him only from the date when repayment should be made," and in subsection (c) that "a partner who * * * makes any payment or advance beyond the amount of capital which he agreed to contribute, shall be paid interest from the date of the payment or advance." These rules are, however, expressly subject to any agreement between the parties.

The only provision in the contract expressly relating to this question is, "That this concern will be financed by Anna R. Cranmer and I. R. Cranmer" (the two defendants). Does this mean that they were merely to *loan* the firm the requisite sums needed for the business, or that they were to contribute capital to that extent?

My conclusion is that the latter is the true intent and meaning of the agreement. It appears that at the time of the negotiations resulting in the agreement, and to the knowledge of all the parties, complainant had experience as a builder but had no capital, and that the defendants had some capital which they desired to invest in some way to reap benefit therefrom. The natural inference would be, therefore, that complainant was to contribute to the firm the benefits of his knowledge and experience as a builder, and the defendants the necessary cash. This is borne out by the fact that by the fifth paragraph of the partnership provisions, complainant is required to "act as architect and chief mechanic," "do the planning and figuring" "and the purchase of all material." This was to be "in consideration of the fact that an equal distribution of the profits" was to be made among all three. It seems evident, therefore, that this extra work, involving his skill and experience as a builder (not as a mere carpenter workman), was to be balanced against the value of defendants' money, and be paid for by the share of profits instead of at $8 per day, which he was

to receive for mere carpenter work—as was also I. R. Cranmer.

Corroboration of this conclusion is found from the testimony of complainant and two or three of his witnesses that the agreement as originally executed had a clause added at the bottom, which specified that interest on the moneys furnished by defendants was to be calculated as a part of the costs of the buildings; that he objected to this, and thereupon this clause and the signatures were cut off and the document then re-executed. Defendants admit that there was an extra clause originally on the document, but that it specified a considerable number of other things as well as interest, which were to be calculated in the costs. This complainant and his witnesses deny. Defendants also deny that the contract was ever executed twice, but say that only the extra clause was cut off. In view of the fact that the agreement shows that meticulous care was taken to have the signature signed exactly as set out at the commencement of the instrument, it is highly probable that it was signed originally *below* by the words "signed by," and examination of several marks on the paper itself indicates, with practical certainty, that such was the fact. The result is that the entire testimony of complainant and his witnesses on this phase of the case is entitled to credence as against that of defendants.

This, however, does not completely solve the question, for it does not determine the amount of the partnership capital, and whether or not any excess contributions were made by defendants. The contract itself does not fix any specific amount as the capital. From the terms of that agreement, and the acts of the parties thereunder, it would seem clear that the agreement of the parties was that defendants should furnish the necessary capital to take care of such building operations as should be agreed upon by all three to be undertaken by the partnership.

There is thus no evidence of any excess contributions.

My recollection is that as to one or more of the houses, mortgages were placed on them after completion and before sale. This would seem to have been done by consent of all,

and in such case the interest paid on such mortgages would be a partnership expense, to be deducted before distribution of profits.

It remains therefore to determine only "the date when repayment should be made." It appears that when the first house was sold an accounting was had and distribution of the profits made. This would seem to fix the rule for the entire business, namely, that repayment, as well as distribution of profits, should be made as to each house built, at the time such house was sold. Inasmuch, however, as it appears that defendants received the moneys on the sales of these houses, no interest would accrue to them in this regard.

The remaining issue arises out of the fact that one of the houses, the selling price for which had been agreed upon by the parties (under the second paragraph of the contract provisions) as $5,500, was sold by defendants for only $4,500. (Defendants were able to make this sale without complainant participating, because of the fact that they had taken title to the real estate in defendants' own names alone.)

It appears that defendants did offer the house for sale at the agreed price and were unable to, or did not, find a purchaser at that figure. They contend, therefore, that they did not violate the contract. With this contention I am unable to agree. The fair meaning of the clause is that sales should be made only at prices agreed on by all. Sale by defendants at a price below the agreed price was a breach. As to the damage suffered thereby the evidence is, and necessarily must me, uncertain. One of complainant's own witnesses—the best qualified of them—testified the sale at $4,500 was low; that the house was worth $5,500, and, indeed, should have brought $5,750 if sold on installments (as it was). On the other hand, the evidence shows that defendants made considerable effort to sell at the higher price. Considering all the evidence, I am inclined to think that the value of the property should be fixed at $5,000 for the purposes of the accounting, charging defendants therefore in favor of the firm with the sum of $500 for their breach of the agreement.

There was a dispute as to the selling price of another house, but complainant, at the hearing, admitted that it had brought all that could have been obtained for it.

Rents received prior to sale should be credited to the firm.

Complainant is entitled to decree for the accounting upon the principles above set forth.